IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUEST LICENSING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BLOOMBERG L.P. and BLOOMBERG FINANCE L.P.,<br><br>Defendants | Civil Action No. 14-561-GMS |

**ORDER CONSTRUING THE TERMS OF U.S. PATENT NO. 7,194,468**

After considering the submissions of the parties and hearing oral argument on the matter, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted claims of U.S. Patent No. 7,194,468 ("the '468 patent):[1]

1. The terms "**changing [price] information**" and "**changing data**" are construed to mean "only [price] data that has changed."[2]

[1] The court does not address indefiniteness contentions at this time.

[2] The plaintiff seeks plain and ordinary meaning, or "information subject to change over the course of a period of time." The court rejects this definition for two reasons. First, as the defendants note, the specification emphasizes conservation of bandwidth as central to this invention. *See* 468 patent at 1:23–27. By sending updates that include only changed information, the system can accomplish this goal. 468 patent at 2:29-39, 13:18-23. Second, the plaintiff's own statements to the Patent Trial and Appeal Board ("PTAB") support the defendants' construction. In its Preliminary Response to the Covered Business Method Patent Review ("CBMR"), the plaintiff stated that the "claims also provide for an apparatus whereby only ***changed*** information of interest to the subscriber is sent to that subscriber's mobile device." (D.I. 123 at A85 (emphasis in original).) The court declines to construe this term inconsistently with the explanation the patent owner provided to the PTAB.

2. The term "**first receiving means for receiving said changing [price] information**" is construed as a means-plus-function term. The claimed function is: "receiving changing [price] information." The corresponding structure is: "a first client-site processor."[3]

3. The term "**second receiving means for receiving changing [price] information in synchronism with said first receiving means**" is construed as a means-plus-function term. The claimed function is: "receiving changing [price] information at the same time as the first receiving means." The corresponding structure is: "a second client-site processor and a communications link connecting it to the first client-site processor."[4]

---

[3] The parties do not dispute that this is a means-plus-function term. The court construes the claimed function according to the term's plain meaning. For the structure, the court goes to the specification, which states "the information receiving apparatus **6** consists of two client site processors CSP**1** and CSP**2** provided by Standard and Poor." 468 patent at 4:8–10.

The court finds that "client site processor" connotes sufficient structure, and therefore rejects the defendants' argument that the processors must be provided by Standard and Poor. When discussing other features of the invention, the specification makes clear that Standard and Poor is simply one example of a services provider. *See* 468 patent at 3:57–67 ("The information provider **2** may be, for example, Standard and Poor's ComStock XpressFeed . . . . It will, of course, be appreciated that information providers **2**, other than Standard and Poor's ComStock XpressFeed, may be used for example, information providers such as Bloomberg and Reuters."). This shows that the patentee did not intend to limit the invention to Standard and Poor client site processors. Client site processors provided by other companies also satisfy this claim term.

[4] This term is construed consistently with term 2, "first receiving means for receiving changing [price] information." The additional component required for this means-plus-function term is "in synchronism." The court agrees with the plaintiff's cited dictionary definitions, which indicate that "synchronism" means that the second receiving means receives changing information at the same time as the first receiving means. (D.I. 115 at 5.)

For the corresponding structure, the specification teaches that the "client site processors CSP**1** and CSP**2** are coupled via a communications link **6**a to a satellite dish SD to enable both client site processors CSP**1** and CSP**2** to receive an encrypted data stream over the satellite network **3** from the information provider **2**." 468 patent at 4:10–14. Therefore, the communications link is the required structure for performing the function of receiving changing information "in synchronism," or at the same time, with the first receiving means.

4. The term "**mobile telecommunications network**" is construed to mean "over a GSM network".[5]

5. The term "**communication means for establishing communication with [a portable computer of] each interested subscriber via the mobile communications network**" is construed as a means-plus-function term. The claimed function is: "establishing communication with [a portable computer of] each interested subscriber via the mobile communications network." The corresponding structure is: "demand engine server 8."[6]

6. The term "**subscriber profile store**" is construed to mean "the location in which the group of datasets that the subscriber wishes to receive from the storage provider is stored."[7]

---

[5] The court adopts the defendants' proposed construction. In doing so, the court does not simply limit the claims to the disclosed embodiments. Rather, the court reaches its conclusion by reading the claims in light of the specification. As a starting point, the problem the patentee intended to address was that "the bandwidth of the current GSM standard mobile telecommunications network does not allow the supply of real time updating information over the mobile telecommunications network." 468 patent at 1:23–27. Second, the patentee recognized that other forms of telecommunications networks, such as "satellite telecommunications technology," did not have the same shortcomings as the GSM mobile communications network. *See* 468 patent at 1:18–23. Third, the specification uses the terms "GSM network" and "mobile communications network" interchangeably. *See, e.g.*, 468 patent at FIG.1, 2:47–50, 3:43–52, 4:1–7, 4:46–56, 5:11–13. In light of the goal of the invention and the language of the specification, the patentee implicitly defined "mobile telecommunications network" to mean "GSM network."

[6] The parties' dispute centers on the required structure for this functional term. The plaintiff proposes "subscriber communications interface" as the corresponding structure. The plaintiff obtains its construction from the specification, which states that the "subscriber communications interface **24** deal[s] with communication over the GSM network." 468 patent at 5:57–59. But the court finds that "subscriber communications interface" does not, on its own, denote sufficient structure for this function. Unlike a generic "server," which describes a physical structure, a generic "interface" lacks any sort of physical limitations. The subscriber communications interface is a subcomponent of the demand engine server, *see* 468 patent at 5:10–30, but the court must use the more definite structure in its construction. Additionally, the specification more precisely links the function of "establishing communication" with the demand engine server. 468 patent at 10:49–52. The court therefore adopts the defendants' proposed construction.

[7] The defendants argue that this term is a means-plus-function term. The plaintiff argues that "store" has a plain meaning denoting structure. Oxford Dictionary of Computing defines "store" as "another name

7. The terms "**means for supplying to each interested subscriber['s portable computer] via the mobile telecommunications network information from the database for the corresponding group of data sets . . . associated with that interested subscriber [in the subscriber profile store] when communication with that interested subscriber['s portable computer] is established**" is construed as a means-plus-function term. The claimed function is: "supplying to each interested subscriber['s portable computer] via the mobile telecommunications network information from the database for the corresponding group of data sets . . . associated with that interested subscriber [in the subscriber profile store] when communication with that interested subscriber['s portable computer] is established." The corresponding structure is: "demand engine server 8 performing the following algorithm:

a. Demand engine server allocates to the subscriber a thread which is part of the subscriber interface

b. Thread accesses the data stored in the database via the database interface

c. Thread identifies the initial values for the sets of data in which the subscriber is interested

---

of storage, or memory." (D.I. 115, Ex. C.) The patent references several types of "stores" and describes how they are used to store, or save, various types of data. 468 patent at 7:1–8:10. Because "store" denotes structure and is not a nonce term such as "means," "module," or "widget," this is not a means-plus-function term.

The plaintiff argues that no construction is necessary, but the court offers a plain meaning construction for clarity. The specification defines "subscriber profile" as "identifying the group of sets of data that the subscriber wishes to receive from the service provider." 468 patent at 3:31–32. Therefore, the "subscriber profile store" is the location in which this group of datasets is stored.

d. Thread communicates these initial values to the subscriber over the network."[8]

8. The term "**means for supplying [from said receiving means] to each interested subscriber['s portable computer] via the mobile telecommunications network changing [price] information for/relating to . . . the data sets associated with that interested subscriber . . . once said information has been supplied to that interested subscriber from the database**" is construed as a means-plus-function term. The claimed function is given its plain and ordinary meaning of "supplying . . . changing information. . . ." The corresponding structure is: "demand engine server 8, which comprises a parser, a packet filter, and a subscriber interface, performing the following algorithm:

a. Parser parses packets of data

b. Demand exchange server accesses the packet filter and conducts a search through the storage and searching arrangement (such as a ternary tree structure, hash table, or binary search tree) in order to determine connected subscribers requiring received update data

c. Demand engine server releases subscriber thread(s) carrying update data to the subscriber interface[9]

---

[8] The court adopts the plain meaning for the function of these terms, which vary slightly from claim to claim. Essentially, the court agrees with the defendants' proposed constructions for the function of these terms.

The parties dispute whether the structure requires disclosure of an algorithm. The plaintiff proposes the structure: "a database and a demand engine server, as well as the related algorithms by which the demand engine server retrieves information from the database." The plaintiff therefore recognizes that an algorithm is required, but then does not disclose one. The 468 patent clearly discloses an algorithm for this function at 5:11–21. The court adopts this description for its construction of the corresponding structure.

9. The term "**information supplying apparatus**" is construed to mean "a demand engine server, a parser, a database, and an administration unit. The demand engine server is connected via a first TCP/IP connection to a first client site processor and the parser is connected via a second, separate TCP/IP connection to a second client site processor. The demand engine server is arranged to supply data received over the first TCP/IP connection to subscribers via a GSM network without having to process and store it while the parser is arranged to cause data received over the second TCP/IP connection to be stored in the database of the subscriber information supplying apparatus. The administration unit enables a systems operator to have access to the subscriber information."[10]

10. The terms "**receiver**," "**communicator**," "**subscriber profile store**," and "**supplier**" as used in claim 31 are construed consistently with the terms "**receiving means**,"

[9] For brevity, the court does not repeat the entire claimed function for the term at issue, but finds that it has its plain and ordinary meaning as provided by the defendants' proposed construction. The specification of the 468 patent links the recited function to its required structure at 12:1–54. The court rejects the plaintiff's argument that an algorithm is not required. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015) (specification must disclose algorithm for specialized functions). The 468 patent discloses the required algorithm in Figure 14. Figures 15a, 15b, and 17 provide greater detail for the algorithm, but go beyond what is necessary to construe the term. *See Wenger Mfg., Inc. v. Coating Machinery Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) (the court "may not import . . . structural limitations from the written description that are unnecessary to perform the claimed function."). The court does not fully adopt the defendants' proposed construction because the court finds that the specification discloses alternatives to the ternary tree structure. The patent explicitly states that other storage and searching arrangements may be used. 468 patent at 9:36–43. Therefore, the construction of this term contemplates other storage and searching arrangements.

[10] The court adopts the defendants' proposed construction. "Information supplying apparatus" is not a term with a self-evident meaning, but it is described in the specification at 4:46–61. The plaintiff supported this construction of the term in its CBMR Preliminary Response, when it argued that the dual-pathway setup saves the claims from being directed to an abstract idea. (D.I. 123 at 87.) Because the information supplying apparatus is the only claim limitation that could include the dual-pathway setup, the defendants' proposed construction must be correct.

"**communication means**," "**subscriber profile store**," and "**means for supplying**" as used in claims 1, 15, and 30.[11]

Dated: March 11, 2016

UNITED STATES DISTRICT JUDGE

[11] Claim 31 contains a parallel structure to claims 1, 15, and 30. The court finds that "receiver," "communicator," and "supplier" do not denote sufficient structure to avoid functional claiming. Because of the similarity between the terms, the court construes each of these terms to have meanings consistent with their uses in the other claim terms.