IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUEST LICENSING CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>BLOOMBERG L.P. and<br>BLOOMBERG FINANCE L.P,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 14-cv-561(GMS)<br>)<br>)<br>)<br>)<br>)<br>) |
| QUEST LICENSING CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>INTERACTIVE DATA CORPORATION<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| QUEST LICENSING CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>THE CHARLES SCHWAB CORPORATION ET<br>AL.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM

## I.    INTRODUCTION

The plaintiff, Quest Licensing Corporation ("Quest"), filed complaints against defendants

Bloomberg L.P. and Bloomberg Finance L.P. (collectively, "Bloomberg"), Interactive Data

Corporation ("IDC"), FactSet Research Systems, Inc., and SunGard Data Systems[1] alleging

infringement of U.S. Patent No. 7,194,468 ("the '468 patent").   Presently before the court is

defendants' Motion for Summary Judgment of Non-Infringement of the '468 patent.  (D.I. 193.)

For the reasons that follow, the court will grant defendants' motion for summary judgment of non-

infringement of the '468 patent.

## II.    BACKGROUND

Quest accuses the defendants of infringing claims 1-3, 6, 10-12, 14, 15, 26, and 29-32 of

the '468 patent.   The '468 patent discloses an apparatus and a method enabling a subscriber to

receive via mobile telecommunications network information that is updated in real time such as

financial market information.   Claim 1 of the '468 patent reads as follows:

> Apparatus for supplying interested subscribers via a mobile telecommunications network *changing information* for each of a plurality of different sets of data, the apparatus comprising:
>
> > first receiving means for *receiving said changing information*;
> >
> > second receiving means for *receiving said changing information* in synchronism with said first receiving means;
> >
> > a data base for storing information received by the first receiving means relating to said different sets of data;
> >
> > communication means for storing, for each interested subscriber, information associating that interested subscriber with a corresponding group of said different sets of data;
> >
> > a subscriber profile store for storing, for each interested subscriber, information associating that interested subscriber with a corresponding group of said different sets of data;
> >
> > means for supplying to each interested subscriber via the mobile telecommunications network information from the data base for the corresponding group of data sets associated in the subscriber profile store with

---

[1] Defendants FactSet Research Systems, Inc. and SunGard Data Systems were dismissed on September 14, 2016 and June 23, 2016, respectively.  (D.I. 167, 177.)

> that interested subscriber when communication with that interested subscriber is established; and
>
> means for *supplying* from said second receiving means to each interested subscriber via the mobile telecommunications network *changing information* relating to the corresponding group of data sets associated with that interested subscriber once said information has been supplied to that interested subscriber from the data base.

'468 patent at 18:28-57 (emphasis added). All of the asserted claims require receiving and/or supplying "changing information." (*Id.* at 18:28-24:59.)

The court issued its Order (D.I. 138) construing the disputed claim terms of the '468 patent on March 11, 2016. On September 9, 2016, the defendants filed a letter request for summary judgment with the court, seeking a judgment of non-infringement of all asserted claims. (D.I. 176.) The court granted defendants' request on November 15, 2016. (D.I. 191.) Defendants move for summary judgment of non-infringement on the grounds that the defendants' accused systems do not receive or supply "only data that has changed" as required by all of the asserted claims of the patent-in-suit.

## III.   STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). There is a genuine issue "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* When determining whether a genuine issue of material facts exists, the district court must view the evidence in the light most favorable to the nonmoving party and draw inferences in that party's favor. *Wishkin v.*

*Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citing Fed. R. Civ. P. 56(e)).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a summary judgment motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue.  *Id.*  The party opposing summary judgment must present more than just "mere allegations, general denials, or . . . vague statements" to show the existence of a genuine issue.  *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991).  As such, a nonmoving party must support their assertion that a material fact is in dispute by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof.  *Celotex*, 477 U.S. at 322.

## IV.   DISCUSSION

### A.  Patent Infringement Standard

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. § 271(a).  A patent infringement analysis entails two steps: "(1) claim construction to determine the scope of the claims, followed by (2) determination of whether the properly construed claim encompasses

the accused device." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998) (citations omitted). The first step, claim construction, is a matter of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The second step, the determination of infringement, is a question of fact. *Bai*, 160 F.3d at 1353. "Literal infringement of a claim occurs when every limitation recited in a claim appears in the accused device, *i.e.*, when 'the properly construed claim reads on the accused device exactly.'" *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1358 (Fed. Cir.2000) (citation omitted). The patent owner has the burden of proving infringement and must meet its burden by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted).

### B. Disputed Limitation: "Changing [Price] Information"

Summary judgment of non-infringement is appropriate because Quest has not identified a genuine issue of material fact regarding the limitation "changing information." Under the court's construction, the term "changing information" means "only [price] data that has changed." (D.I. 138 at 1.) In support of its motion, Defendants argue that it is undisputed that defendants' accused systems receive and supply transaction information—such as stock trades, bids and quotes—that always includes non-changing information such as the stock symbol. (D.I. 194 at 11.) On the other hand, Quest contends that there is a material factual dispute as to whether sending non-repeating price data along with a ticker symbol (or other identifier) is within the scope of the claims. (D.I. 207 at 16.) Quest argues, that under the court's construction of "changing [price] information," the attachment of the stock symbol or other identifier does not preclude a finding of infringement. (D.I. 207 at 1.)

The court agrees with the defendants. Initially, for the first time in the ˢᵉ proceedings, Quest contends that stock symbols are "changing information." (D.I. 208 at 2.) This assertion flies

directly in the face of the court's claim construction. (*Id.*) The court has construed the term "changing information" to mean "only [price] data that has changed." (D.I. 138.) In its Order construing this limitation, the court stated the following:

> The plaintiff seeks plain and ordinary meaning, or "information subject to change over the course of a period of time." The court rejects this definition for two reasons. First, as the defendants note, the specification emphasizes conservation of bandwidth as central to this invention. *See* 468 patent at 1:23-27. By sending updates that include only changed information, the system can accomplish this goal. 468 patent at 2:29-39, 13: 18-23. Second, the plaintiff's own statements to the Patent Trial and Appeal Board ("PTAB") support the defendants' construction. In its Preliminary Response to the Covered Business Method Patent Review ("CBMR"), the plaintiff stated that the "claims also provide for an apparatus whereby only ***changed*** information of interest to the subscriber is sent to that subscriber's mobile device." (D.I. 123 at A55 (emphasis in original).) The court declines to construe this term inconsistently with the explanation the patent owner provided to the PTAB.

(*Id.* at 1 n.2.)

Quests seeks to avoid the consequences of its own statements, both in the '468 patent specification and before the PTAB, with the accusation that "the Court narrowed the meaning of 'changing information' at Markman when it adopted defendants' construction." (D.I. 207 at 8-9.) This is a new argument that is unavailing for the reasons set forth in the court's order. Quest's answering brief barely touches on the issues raised by the defendants. Instead, Quest spends substantial portions of its brief attempting to persuade the court to revisit its claims construction ruling. Quest does not dispute that defendants' accused systems receive and send the stock symbol every single time the systems receive data from the exchanges or supply data to mobile users. Given this fact and the record evidence, the court finds, as a matter of law, that defendants' accused systems receive and supply financial exchange transaction information that always includes a

unique identifier that does not change (e.g., stock symbol). (D.I. 196, Miller Decl. (Bloomberg) at ¶ 3-4; D.I. 197, Batten Decl. (IDC) at ¶¶ 4-5; D.I. 198, Russell Decl. (Schwab) at ¶¶ 3-4.)[2]

Quest argues there is a difference in expert opinion between Quest's expert, Dr. Nathaniel Polish ("Dr. Polish"), and defendants' experts, Dr. Art Brody and Dr. Vijay Madisetti, as to whether sending a ticker symbol as part of a data packed with a changed price constitutes "only data that has changed." (D.I. 207 at 17.) Quest cites *Leader Techs., Inc. v. Facebook* as persuasive authority that supports its view that this difference sets up a dispute of material fact. C.A. No. 09-862-LPS, 2011 WL 1514701, at *2 (D. Del. Mar. 14, 2011) (holding that "[t]he expert witnesses . . . advanced detailed and plausible, but conflicting, opinions concerning the application of the Court's claim construction to the accused device for infringement purposes" sufficient to "preclude summary judgment"). Unlike *Leader,* here, a classic battle of the experts is not extant. Quest's expert failed to apply the court's claim construction. In his expert report, Dr. Polish stated that defendants' accused systems receive "real-time changing data" from exchanges or "real time feeds from exchanges" and that those systems supply "real-time information" to the mobile users. (D.I. 194, Ex. 5 ¶¶ 45, 73; Ex. 6 ¶ 46, 48, 69; Ex. 7 ¶¶ 47, 73.) This opinion ignores the court's use of the word "only" in its construction of "changing information." This lack of attention to the court's legal determination is disqualifying. Dr. Polish's new declaration is similarly unhelpful to Quest and equally lacking in the force needed to fend off the entry of summary judgment. *See TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("conclusory statements are insufficient to shoulder the non-movant's burden"); *Aristocrat Techs. Australia Pty Ltd. V.*

---

[2] Quest does not contest this fact in its answering brief or cite any materials in the record to contradict this finding. In fact, for Bloomberg and Schwab, Quest's expert has admitted that non-changing ticker symbols are always included every time the price information is communicated. *See, e.g.*, D.I. 195, Ex. 5, Polish Bloomberg Report at ¶74 ("the price information includes a timestamp that is associated with the prices and ticker symbols that gets transmitted every time price information is communicated."); Ex. 7 ("the price information includes a timestamp that is associated with the prices and ticker symbols in the same data structure for the real time data transmission.").

7

*Int'l Game Tech.*, 709 F.3d 1348, 1360-61 (Fed. Cir. 2013) (expert's conclusory declaration was not useful).   Accordingly, summary judgment is appropriate, and the court will grant the defendants' motion.

## V.   CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment of non-infringement of all asserted claims of the patent-in-suit will be granted.

Dated: January **19**, 2017

_____
UNITED STATES DISTRICT JUDGE