# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUEST LICENSING CORPORATION : <br> : <br> Plaintiff, : <br> v. : <br> : <br> BLOOMBERG L.P. and : <br> BLOOMBERG FINANCE L.P, : <br> : <br> Defendants. : | C.A. No. 14-561-LPS <br> CONSOLIDATED |
| QUEST LICENSING CORPORATION : <br> : <br> Plaintiff, : <br> v. : <br> : <br> INTERACTNE DATA CORPORATION : <br> : <br> Defendant. : | |
| QUEST LICENSING CORPORATION : <br> : <br> Plaintiff, : <br> v. : <br> : <br> THE CHARLES SCHWAB : <br> CORPORATION ET AL. : <br> : <br> Defendant. : | |

Stephen B. Brauerman and Sara E. Bussiere, BAYARD, P.A., Wilmington, DE

Alfred. R. Fabricant, Lawrence C. Drucker, and Vincent J. Rubino, III, BROWN RUDNICK, LLP, New York, NY

    Attorneys for Plaintiffs

Rodger D. Smith II and Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Michael Levin, WILSON SONSINI GOODRICH & ROSATI PC, Palo Alto, CA

Edward G. Poplawski and Olivia M. Kim, WILSON SONSINI GOODRICH, Los Angeles, CA

    Attorneys for Defendants Bloomberg L.P., Bloomberg Finance L.P., The Charles Schwab Corporation, and Charles Schwab & Co., Inc.


David E. Moore, Bindu A. Palapura, and Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP, Wilmington, DE

Robert S. Mallin, BRINKS GILSON & LIONE, Chicago, IL
    Attorneys for Defendant Interactive Data Corporation

## **MEMORANDUM OPINION**

March 27, 2019
Wilmington, Delaware

[signature]

**STARK, U.S. District Judge:**

Pending before the Court is Defendants Bloomberg L.P. and Bloomberg Finance L.P. ("Bloomberg"), Interactive Data Corporation ("IDC"), and The Charles Schwab Corp. and Charles Schwab and Co.'s ("Charles Schwab") (collectively "Defendants") renewed motion to declare this case exceptional and for attorneys' fees pursuant to 35 U.S.C. § 285. (D.I. 248) On April 29, 2014, Plaintiff Quest Licensing Corp. ("Quest" or "Plaintiff") sued Defendants, alleging infringement of U.S. Patent No. 7,194,468 ("the '468 patent"). (D.I. 1)[1]

The asserted claims of the '468 patent include the following limitation (or one similar to it): "[a]pparatus for supplying to interested subscribers via a mobile telecommunications network ***changing price information*** for a plurality of different sets of financial market data" (emphasis added). The Court construed "changing [price] information" to mean "*only* [price] data that has changed." (D.I. 138 at 1) (emphasis added) In doing so, the Court explained:

> The plaintiff seeks plain and ordinary meaning, or "information subject to change over the course of a period of time." The court rejects this definition for two reasons. First, as the defendants note, the specification emphasizes conservation of bandwidth as central to this invention. *See* 468 patent at 1:23-27. By sending updates that include only changed information, the system can accomplish this goal. 468 patent at 2:29-39, 13:18-23. Second, the plaintiff's own statements to the Patent Trial and Appeal Board ("PTAB") support the defendants' construction. In its Preliminary Response to the Covered Business Method Patent Review ("CBMR"), the plaintiff stated that the "claims also provide for an apparatus whereby only *changed* information of interest to the subscriber is sent to that subscriber's mobile device." (D.I. 123 at AS5 (emphasis in original).) The court declines to construe this term

---

[1] Plaintiff also filed complaints against Sungard Data Systems, Inc. and FactSet Research Systems, Inc., who were dismissed on June 23 and September 13, 2016, respectively. (D.I. 170, 177)

>inconsistently with the explanation the patent owner provided to the
>PTAB.

(D.I. 138 at 1 n.2)

Thereafter, the Court granted Defendants' request to file a motion for summary judgment of non-infringement (D.I. 191) and then, after briefing (D.I. 194, 207, 208) and a hearing (D.I. 217), granted the summary judgment motion (D.I. 222). The Court then denied without prejudice Defendants' first motion for attorneys' fees. (D.I. 246) The Federal Circuit affirmed the Court's summary judgment order on June 8, 2018 (D.I. 247) and Defendants renewed their motion for attorneys' fees on August 8, 2018 (D.I. 248). Briefing was completed on September 7, 2018. (*See* D.I. 249; D.I. 253; D.I. 255) On September 12, 2018, the case was reassigned from the now-retired Honorable Gregory M. Sleet.

## LEGAL STANDARDS

In "exceptional" patent cases, a Court may award "reasonable attorney fees" to the "prevailing party." 35 U.S.C. § 285. Federal Circuit law applies when interpreting and applying § 285. *See Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1032 (Fed. Cir. 2006). "An exceptional case under § 285 is 'simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Nova Chems. Corp. (Canada) v. Dow Chem. Co.*, 856 F.3d 1012, 1016 (Fed. Cir. 2017) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014)). "While an adverse claim construction generally cannot, alone, form the basis for an exceptional case finding, . . . a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction." *Taurus IP, LLC v.*

*DaimlerChrysler Corp.*, 726 F.3d 1306, 1329 (Fed. Cir. 2013). Ultimately, the Court must make a discretionary decision based on the totality of circumstances, which may include factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 & n.6. A party moving for attorneys' fees must demonstrate, by a preponderance of the evidence, that a case is exceptional." *Id.* at 1758.

## DISCUSSION

There is no dispute that Defendants are the prevailing parties. The Court granted Defendants summary judgment of noninfringement, writing that Plaintiffs' argument "flies directly in the face of the court's claim construction." (D.I. 221 at 5-6) The Court found that Plaintiffs' non-infringement position was essentially an effort to relitigate claim construction and did not present any genuine disputes of material fact. (*See id.* at 6-8) The Federal Circuit affirmed without opinion pursuant to Federal Circuit Rule 36.[2] (D.I. 249 at 1)

Defendants cite several reasons for why this case "stands out" and should be deemed exceptional. Their principal contention is that Plaintiff's infringement claims became "exceptionally meritless" after the Court issued its claim construction order in March 2016, yet Plaintiff continued to litigate – driving up Defendants' costs and wasting judicial resources – despite knowing it could not prevail. After the claim construction order, Defendants repeatedly advised Plaintiff that, based on the undisputed manner in which their accused systems operated combined with Plaintiff's prior statements about the scope of their patents, Plaintiff should drop

---

[2]The Federal Circuit's affirmance, even by a Rule 36 order, does not make this case exceptional or even contribute much to the analysis. Plaintiff had every right to appeal this Court's claim construction and the Federal Circuit regularly resolves appeals without opinions, for a variety of reasons (which are set out in Rule 36 itself).

3

its claims (or agree to a stipulated judgment to allow an appeal) and, if Plaintiff refused, Defendants would seek their attorneys' fees.[3] Defendants add that Plaintiff's continued pursuit of claims it knew to be meritless demonstrates subjective bad faith. Finally, Defendants assert that Plaintiff was motivated by financial difficulties, which posed a threat to Plaintiff's ability to remain an operating entity, as is highlighted by the purportedly outrageous, unjustifiable settlement demands Plaintiff made.

There are certainly grounds here on which a reasonable judge might deem this case to be exceptional. Once the Court issued its claim construction order, Plaintiff's likelihood of prevailing on infringement was reduced quite substantially.[4] This reality is evident not just in Defendants' repeated statements to Plaintiff to this effect but, more importantly, by Defendants'

---

[3]For example, Bloomberg and Schwab wrote to Plaintiff on March 22, 2017 and IDC did the same on March 28 of that year. (D.I. 249 at 4-7) These were not the only occasions on which Defendants provided such notice to Plaintiff. (*See also, e.g.*, D.I. 228 Ex. M) (Defs.' Nov. 21, 2016 request that Plaintiff stipulate to non-infringement under Court's construction of "changing information," after Court had agreed to hear summary judgment motion))

[4]Defendants' contention that Plaintiff had *no chance* of proving infringement (with which the Court disagrees) can be summarized as follows:

> . . . [W]hen the Court unambiguously construed the term "changing information" to mean "*only* [price] data that has changed," it became clear that Plaintiff did not have any meritorious claims of infringement against Defendants. . . . Both before and after claim construction, Plaintiff made repeated representations to the PTO/PTAB and this Court that "changing information" does *not* include stock symbols. But this representation directly contradicted Plaintiff's allegations of infringement in this case because Defendants' accused systems *always* receive and supply stock symbols. . . . Plaintiff's own expert even *agreed* that Defendants' systems receive and send the stock symbol every single time.

(D.I. 249 at 1-2)

4

success in persuading Judge Sleet to permit them to file a motion for summary judgment of non-infringement. On November 15, 2016, Judge Sleet concluded that "[D]efendants have set forth a compelling argument for non-infringement based on the court's construction of the term 'changing information.'" (D.I. 191 at 2) As Defendants observe (without dispute from Plaintiff): "it was a rare event for this Court [i.e., Judge Sleet] to even grant permission to engage in summary judgment practice and to have a hearing on the motion." (D.I. 249 at 1; *see also* D.I. 217 at 4 (Judge Sleet describing "granting of permission to engage in summary judgment practice" as "a relatively rare event, at least in my practice"))

Then, in granting summary judgment to Defendants, Judge Sleet faulted Plaintiff for relying on a new expert opinion that exhibited a "lack of attention" to the Court's claim construction and was, therefore, "disqualifying." (D.I. 221 at 7) He found that Plaintiff's expert "failed to apply the court's claim construction" and the expert's "opinion ignores the court's use of the word 'only' in its construction of 'changing information.'" (*Id.*) To Judge Sleet, Plaintiff's new "assertion[s] fl[ew] directly in the face of the court's claim construction." (*Id.* at 5-6)

Notwithstanding this substantial support for Defendants' position, there are, in this Court's view, sufficient countervailing factors as to render this case, in totality, not "exceptional" within the meaning of Section 285.

First, the claim construction position Plaintiff was advocating was not unreasonable. The Court reaches this conclusion not only from its own review of the claim construction dispute but also based on Judge Sleet's statement at the summary judgment hearing (in the course of ruling from the bench) that Quest "made a fine argument," although it was "a new argument." (D.I. 217 at 28) He added: "[i]t may have been the case that had these theories been presented . . . at the

5

time of Markman" or in a timely motion for reconsideration, "I may well have reconsidered in light of what I have heard today." (*Id.* at 28-29) But Plaintiff did not move for reconsideration.

Second, losing a motion for summary judgment (even one preceded by a loss on a motion for leave to file a motion for summary judgment) does not necessarily make a case exceptional. *See Honeywell Int'l Inc. v. Fujifilm Corp.*, 708 F. App'x 682, 684 (Fed. Cir. 2018) ("[L]osing a summary judgment motion should not automatically result in a finding of exceptional conduct."). It appears to the Court that Plaintiff was at all times "continually assess[ing] the soundness of pending infringement claims," *Taurus IP*, 726 F.3d at 1328, and not blindly barreling toward trial on claims it knew it could not prove.

Third, and perhaps most importantly, the Court does not find Plaintiff's (and its expert's) "interpretation" and application of the Court's claim construction to be unreasonable or indicative of bad faith. To be sure, post-claim construction Plaintiff had a weak infringement position; but Defendants have failed to persuade the Court that Plaintiff's claims were "objectively baseless after the district court's *Markman* order." *Cf. AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1361 (Fed. Cir. 2017) (finding case exceptional).

Judge Sleet summarized Plaintiff's position at summary judgment as follows:

> Quest contends that there is a material factual dispute as to whether sending non-repeating price data along with a ticker symbol (or other identifier) is within the scope of the claims. Quest argues, that under the court's construction of 'changing [price] information,' the attachment of the stock symbol or other identifier does not preclude a finding of infringement.

(D.I. 221 at 5) (internal citations omitted)[5] While Judge Sleet rejected Plaintiff's position, this

---

[5]With somewhat more detail, Plaintiff's position at the summary judgment stage was as follows:

> . . . [I]t was reasonable for Quest to assert that "changing [price] information" could include information that had not changed. . . . It was reasonable to interpret the term "data" or "[price] data" in the Court's construction to be a packet of data containing a stock ticker and price because it is consistent with the preferred embodiment of the patent.

(D.I. 253 at 1)

> . . . [T]he Court's construction does not address the meaning of "[price] data," much less limit it to a particular embodiment. Thus, Quest reasonably believe[d] that the issue of whether data packets containing changing price information meet the limitation was a disputed issue of material fact for the jury that precluded summary judgment.

(D.I. 253 at 2)

> . . . Defendants' non-infringement argument is based on an interpretation of "changing [price] information" that reads out the preferred embodiment of the '468 Patent from the scope of the claims because it strips from "changing [price] information" any component of that information which has not changed.

(D.I. 253 at 7)

> . . . Quest's expert did not ignore the Court's construction. Rather, he interpreted the Court's construction consistently with the preferred embodiment of the patent.

(D.I. 253 at 15)

With respect to Quest's prior statements about the scope of its patent:

> . . . Quest simply acknowledged that a stock's ticker symbol typically does not change, and so a stock ticker symbol is not, in and of itself, "changing information." However, this has no bearing on whether "[price] data" containing a stock ticker and a price that has changed is, as a whole, "changing [price] information" under a reasonable interpretation of the Court's

Court does not feel that Plaintiff should have foreseen that to be the only realistic outcome. Plaintiff was advocating a non-frivolous position. Having reached this conclusion, the Court further finds no litigation misconduct by Plaintiff, including Plaintiff's cancellation of depositions in connection with its change of counsel. (*See* D.I. 253 at 17 n.21)[6]

Nor is the Court persuaded by Defendants' unsupported speculation as to Plaintiff's bad faith motivation for proceeding with this case. The Court carefully reviewed Defendants' allegations about Plaintiff's expert and Plaintiff's own statements (in this case and in prosecution of the patent-in-suit and related patents) and simply does not see in any of it solid support for Defendants' characterizations of Plaintiff's tactics here. Defendants have failed to persuade the Court that "Plaintiff subjectively knew that its infringement allegations were meritless and frivolous." (D.I. 249 at 17) Equally unpersuasive is Defendants' rhetoric about Plaintiff's

---

construction.

(D.I. 253 at 2)

> . . . Quest's arguments in the Patent Office consistently stand for the unremarkable proposition that a stock ticker symbol is not, in and of itself, "changing information" because a stock's ticker symbol rarely, if ever, changes.

(D.I. 253 at 14)

[6]The Court is ***not*** persuaded by Plaintiff's contention that "[i]t was not until after the Court allowed summary judgment briefing that Defendants finally revealed how their systems receive data from the stock exchanges." (D.I. 253 at 15-16) Instead, it appears that Plaintiff knew the pertinent aspects of how Defendants' systems functioned, and knew Defendants' non-infringement positions, before the summary judgment phase of the case, including through receipt of Defendants' expert reports and the outline Defendants provided of their non-infringement positions at the May 9, 2016 hearing. (*See* D.I. 255 at 6-7) Plaintiff is avoiding paying Defendants' fees because it managed to articulate a reasonable infringement theory even after losing on claim construction – ***not*** because Defendants kept Plaintiff in the dark about their positions or how their systems operate.

8

"rapacious" and "outlandish damages demands." (D.I. 249 at 2-3) Defendants fail to rebut Plaintiff's contention that the demands were based on expert analysis accounting for Defendants' revenues from allegedly infringing activities. (*See, e.g.*, D.I. 253 at 8-9) (citing evidence) Furthermore, the Court agrees with Plaintiff that Defendants have made "baseless and irresponsible assertion[s]" about Plaintiff's purported "financial problems" and the "intentions of Quest and its management." (D.I. 253 at 19)

In sum, the Court does not view this case as one that never should have been brought; nor is the Court persuaded that the interests of deterrence warrant an award of attorneys' fees from the date Defendants were granted leave to file summary judgment or some other date. This Court's review of the record persuades it that Plaintiff was advocating reasonable infringement positions as it opposed Defendants' motion for summary judgment of noninfringement. The case does not "stand out" from other patent cases. For all of these reasons, the Court is not persuaded by a preponderance of the evidence that this case is exceptional within the meaning of Section 285.

## CONCLUSION

Reasonable minds could certainly differ as to whether the appropriate exercise of the Court's discretion, under the totality of the circumstances, is to deny Defendants' motion for attorneys fees. And, of course, the undersigned Judge does not know whether the Judge who handled nearly the entirety of this case would have reached the same conclusion. Nonetheless, the Court's task is to evaluate the record as best as it can in light of the applicable legal standards. Having done so, the Court's determination is to deny Defendants' motion. An appropriate Order follows.